Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Judge Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8182 | **DATE** | 7/16/2003 |
| **CASE TITLE** | Meyer v. Doerge, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Compel Arbitration and to Dismiss or Stay Proceedings

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motion to compel arbitration is **granted** in part and **denied** in part. The parties must arbitrate all those disputes relating to investments where Bear Stearns acted as clearing agent. All other disputes regarding investments where Bear Stearns did not act as clearing agent shall proceed to discovery without further delay. Enter memorandum and opinion. Status hearing set for August 18, 2003 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 17 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 20 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | U.S. DISTRICT COURT 03 JUL 16 PM 7:09 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| D. MICHAEL MEYER,<br><br>Plaintiff,<br><br>v.<br><br>DAVID DOERGE, CHARLES E. BALIS,<br>DOERGE CAPITAL MANAGEMENT,<br>BALIS, LEWITTES & COLEMAN, INC., and<br>BALIS, LEWITTES & COLEMAN, L.P.,<br><br>Defendants. | **DOCKETED**<br>JUL 1 7 2003<br><br>No. 02 C 8182<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Defendants, David Doerge, Charles E. Balis, Doerge Capitial Management, Balis Lewittes & Coleman, Inc. and Balis Lewittes & Coleman, L.P., petition the Court, pursuant to 9 U.S.C. § 1, *et seq.*, for an order compelling plaintiff, D. Michael Myer, to arbitrate the issues in Myer's pending complaint against defendants and to dismiss or stay the instant litigation. For the reasons set forth below, defendants' petition is **granted** in part and **denied** in part.

## BACKGROUND

This action arises out of investments marketed and sold by defendant David Doerge to plaintiff Myer. The complaint alleges that Meyer began investing money with Doerge by opening two financial accounts: one with Bear Stearns Securities Corporation, and one with defendant Doerge Capital Management (DCM). In connection with the Bear Stearns account, Meyer signed a Customer Agreement that outlined the terms and conditions governing Meyer's relationship with Bear Stearns. Of particular relevance here, the Customer Agreement contained

1



an arbitration clause requiring that all disputes with Bear Stearns be submitted to arbitration. Apparently, no such agreement existed with regard to the DCM account.

The complaint then describes three types of investments services that Doerge provided Meyer. First, Doerge advised Myer to purchase and sell publically-traded securities, with Doerge facilitating those purchases and sales and Bear Stearns acting as the clearing broker. The publically-traded securities were held in Meyer's Bear Stearns brokerage account.

The second type of investment services provided by Doerge involved the marketing sale of investment opportunities in managed funds, private debt and equity placements, collateralized bridge loans, and options. To fund these investments, Meyer would authorize Bear Stearns to wire transfer monies from his brokerage account to the desired investment. Bear Stearns did not serve as clearing broker for any of these private investment transactions. The complaint also alleges that on at least six occasions Doerge used forged documents to obtain large sums of money from the Meyer's Bear Stearns account to fund various corporate entities. Bear Stearns did not serve as clearing broker for any of these transactions.

The third and final type of investment services that Doerge provided involved soliciting Myer's participation in limited partnerships or limited liability companies (Partnerships). Doerge would use the proceeds from the sale Partnerships interests to invest in private debt or equity transactions on behalf of the newly formed entity. Although the complaint does not specify how Myer funded these investments, it is clear that Bear Stearns did not serve as clearing broker for the transactions.

In this suit, Myer alleges that Doerge fraudulently induced him into investing millions of dollars in illiquid, unsafe investments as to which Doerge had performed no meaningful due

2

diligence. To conceal this conduct, Meyer alleges that Doerge furnished monthly statements that contained material misrepresentations. In addition, Meyer alleges that Doerge transferred $1.2 million from Meyer's brokerage account without authorization. From these allegations, Meyer fashions eight causes of action including common law fraud, violation of Illinois Consumer Fraud Act and Deceptive Business Practices Act, violation of Illinois securities laws, breach of fiduciary duty, conversion, negligent misrepresentation, professional negligence and malpractice, and aiding and abetting. Rather than answer Meyer's claims, defendants have petitioned the Court to compel arbitration.

The focus of defendants' motion is upon the Customer Agreement executed between Meyer and Bear Stearns. Paragraph 21 of the Customer Agreement commits the parties to arbitrate any controversies arising between Meyer and Bear Stearns. A separate clause makes entities such as defendants third party beneficiaries of this promise in limited circumstances:

> **8. CLEARANCE ACCOUNTS.** Bear, Stearns Securities Corp., carries your account(s) as clearing agent for your broker. Unless Bear, Stearns Securities Corp. receives from you written notice to the contrary, Bear Stearns Securities Corp. may accept from such other broker, without any inquiry or investigation: (a) orders for the purchase or sale of securities and other property in your account(s) on margin or otherwise and (b) any other instructions concerning your account(s) or the property therein. You understand and agree that Bear Stearns shall have no responsibility or liability to you for any acts or omissions for *such broker,* its officers, employees or agents. *You agree that your broker and its employees are third party beneficiaries of this Agreement, and that the terms and conditions thereof, including the arbitration provision, shall be applicable to all matters between or among any of you, your broker and its employees, and Bear Stearns and its employees.*

Defendants argue that, as Meyer's broker, they are third party beneficiaries of the entire Customer Agreement, including the arbitration provision. In response, Meyer argues that defendants can only invoke the Customer Agreement's arbitration provision if the disputed transactions utilized Bear Stearns as a clearing agent. Meyer claims that the principal

3

controversy in this case involves investment transactions in which Bear Stearns did not act as clearing agent. Meyer therefore maintains that the present dispute is not subject to the Customer Agreement's arbitration provision.

## ANALYSIS

The Seventh Circuit recently decided *Stone v. Doerge*, 328 F.3d 343 (7th Cir. 2003), which directly bears on the present dispute. *Stone* resolved many of the precise questions raised by defendants' motion. Of particular importance, the *Stone* Court interpreted a Bear Stearns customer agreement that is *materially indistinguishable* from the Customer Agreement before the Court. Accordingly, the Seventh Circuit's interpretation of that agreement controls our reading of the Customer Agreement here and ultimately dictates the Court's determination.

In *Stone*, the plaintiff brought an action in federal court alleging that Doerge, in his role as investment advisor, committed fraud in connection with several private placements. Id. at 344. Like here, Doerge argued that arbitration agreement between the Stone and Bear Stearns precluded Stone's access to federal court. Id. The Seventh Circuit disagreed. The court held that the Stone's claims were not arbitrable under the Bear Stearns agreement because the private investments were neither cleared by Bear Stearns nor held in a Bear Stearns account. Id. at 346. The court found that it "makes little sense, and has a potential for erratic results, if [the agreement is] read to cover transactions in which Bear Stearns played no role." Id. The court therefore concluded that "the only sensible way to read the contracts as requiring arbitration if, and only if, Bear Stearns cleared the trades that gave rise to a securities dispute." Id.

Under this interpretation, it is clear that a significant number of Meyer's claims are not subject to Customer Agreement's arbitration provision. As described above, Meyer alleges three categories of investment transactions implicating defendants. Only those claims relating to the

4

first category of transactions must be arbitrated.

1. *Publically-Traded Securities*

The complaint alleges that Doerge advised Meyer regarding the purchase and sale of publically-traded securities. The complaint further alleges that Doerge facilitated those purchases and sales and Bear Stearns acted as the clearing broker. For these transactions, the Customer Agreement confers third-party beneficiary status upon defendants, enabling them to invoke the agreement's arbitration provision. *See Stone*, 328 F.3d at 346.

2. *Investments in managed funds, private debt and equity placements, collateralized bridge loans, and options.*

The complaint describes a second category of investments services that included the marketing and sale of investment opportunities in managed funds, private debt and equity placements, collateralized bridge loans, and options. It is undisputed that Bear Stearns did not act as clearing agent for any of these private investment transactions. Bear Stearns did, however, participate in the transaction to the extent that it transferred monies from Meyer's Bear Stearns brokerage account to fund the selected investments. Defendants argue that Bear Stearns' role in transferring funds out of Meyer's brokerage account to another destination constitutes sufficient participation in the relevant transaction to trigger the Customer Agreement's arbitration provision. This argument was not addressed in *Stone*. The *Stone* Court made no mention of the source funding Stone's private investments. But this distinction does not weaken the force of *Stone*'s underlying premise. In interpreting a virtually identical customer agreement, the *Stone* Court unequivocally held that the agreement requires arbitration "*if, and only if*, Bear Stearns cleared the trades that give rise to a securities dispute." *Id.* at 346 (emphasis added). This interpretation leaves no room for modification depending on the funding source of the particular

5

transaction. As Meyer's private investment transactions did not utilize Bear Stearns as a clearing agent, the Customer Agreement does not require that disputes relating to those transactions be arbitrated. This same goes for the purportedly unauthorized transfers from Meyer's Bear Stearns account.

In reaching this conclusion, the Court is mindful of the federal policy favoring arbitration and that all disputes in construction of arbitration agreements should be resolved in favor of arbitration. Nevertheless, the Court cannot reasonably interpret the Customer Agreement in any other fashion that would require arbitration of disputes between Meyer and defendants other than when Bear Stearns acts as a clearing agent. The federal policy favoring arbitration does not give courts license to compel arbitration absent an agreement to do so. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

3.  *Investments in Partnerships*

The third and final category of investments services described in the complaint involved Meyer's participation in the Doerge-created Partnerships. Again, Bear Stearns did not serve as clearing broker for these transactions. Accordingly, like the private investment transaction described above, disputes relating to Meyer's investments in the Partnerships are not subject to the Customer Agreement's arbitration provision.

4.  *Stay Pending Arbitration*

Finally, the Court declines defendants' invitation to stay the remainder the litigation pending resolution of the arbitrable claims. Courts consistently allow arbitration and federal litigation to proceed simultaneously. *Giles v. Blunt, Ellis & Loewi, Inc.*, 845 F.2d 131, 134 (7th Cir. 1988); *Chang v. Lin*, 824 F.2d 219, 222 (2d. Cir. 1987). As explained by Justice White in *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985):

6

once it is decided that [claims] are to go forward independently, the concerns for speedy resolution suggests that neither should be delayed. While the impossibility of lawyers being in two places at once may require some accommodation in scheduling, . . . *the heavy presumption* should be that the arbitration and the lawsuit will each proceed in its normal course.

*Dean Witter*, 470 U.S. at 225 (White, J. concurring) (emphasis added). Defendants have not offered any compelling reason for delaying litigation of Meyer's nonarbitrable claims. Moreover, there is a strong possibility that Meyer will abandon those claims subject to arbitration, as Meyer has repeatedly suggested that he is principally concerned with defendants' activities regarding the nonarbitrable Partnership claims. Therefore, defendants' concerns regarding the hazards of simultaneous litigation will likely never materialize.

## CONCLUSION

The parties must arbitrate all those disputes relating to investment transactions where Bear Stearns acted as clearing agent. All other claims should proceed to discovery without further delay.

IT IS SO ORDERED.

7/16/03

William J. Hibbler
United States District Court